972 F.2d 1304
 141 L.R.R.M. (BNA) 2313, 122 Lab.Cas. P 35,693,
1 Wage & Hour Cas.2d (BNA) 9
 Robert A. MUNIZ, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
Jay E. ALBRECHT; Bert D. Alton, III; Roy L. Ashlock, Sr.;
Marc Bergman; Merwyn L. Bickler; Jorge A. Blackwood;
Walter Blayney, Jr.; Ervin Byler; John B. Cassidy;
Eufemio R. Castillo; H.J. Chellon; Bruce A. Curry; Ralph
J. Daley; Donzell Digby; James W. Doty; Carl Doty;
William T. Flartey; Charles R. Ford; Richard A. Frerkes;
Leo Gladu; Joseph Gomes, Jr.; Robert A. Grabendike, Jr.;
Harry Halpin; Sanford Hammack; Kelly Bond Hartman; Thomas
F. Holcomb; William A. Hollifield; Arthur Hopwood;
Richard G. Hussung; John R. Jay; Martin L. Kimbrell; W.W.
Kortum; Arthur C. Kreps; David Lathan; Joseph L. Lemar;
Daniel B. Mazzaanti; David Miller; Earle P. Milligan;
Glen Openshaw; John J. Ortegel; Ralph Ott; Randy T. Rail;
Eugene L. Rienks; Earl J. Rosekrans; Albert Sanchez;
Herbert E. Sieler; William H. Simpkinson; Edwardo Sosa;
Jimmy Stansbury; James Stidham; Clayton Threewit; Almyra
R. Tierney; Richard E. Weimer; Floyd G. White; William A.
Williams; Norman Wolfgang; Helen L. Wood; and Wilton A.
Woodall, Plaintiffs-Appellants,
and
Betty Askew; Ernest S. Blaise; Robert J. Brooks; Robert
M. Burns, Jr.; John I. Carson; John Carter; Marcelo
Casas; Juan C. Castro; Charles E. Collison; William E.
Crum; Harold A. DeCesari; Gerald F. Emert; Michael S.
Fahey; Clifton Harris; Robert Harada; Donald E. Hart,
Jr.; Paul Harvey; Charles A. Holm; Modesto D. Hurtado;
Calvin G. Jacobs; Richard A. King; Jerry Knox; Henry E.
Lauer; Daniel Lechliter; Robert D. McCarty; William D.
McCrillis; Francesca McKeown; Norberto Martinez; Gary Lee
Mason; Ronald E. Miele; Gene P. Miller; Lewis M.
Mitchell; Norman K. Moore; Charles G. Mullikin; Gerald E.
Oakley; Basil T. Puller; Mark L. Rees; Kenneth D. Reinke;
Joseph W. Robinson; Dale R. Schreiner; David W. Smith;
Randall H. Spencer, Sr.; Scott H. Tufts; Robert E.
Whiteside; Gerald E. Winey; Donald F. Wright; Wayne
Younger; Donald Ancell; Edward A. Anderson; Oscar Q.
Anloague; George C. Beach; James E. Brown; Cindy A.
Carpenter; Richard S. Chiorino; George S. Clig; Tom
Collilns; Lawrence E. Cook; Donald Dalton; Linda D.
Duenas; Will Dumont; Timothy R. Everhart; Andy Flores;
Gerald D. Fredricksen; Phillip Gago; Jeffrey Geyer; Jay
Hansen; Harry W. Kowolsky; Leonardo Z. Lara; Daniel
Lopez; Richard Lubniewski; Karl McGuinness; Charles E.
Marshall, Jr.; Janet C. Matthews; David F. Merchant;
Claude W. Minyard; Donald R. Morgan; Donald E. Motz; Paul
Murphy, Jr.; Gene Needham; Robert Philips; John M.
Porter, Jr.; Robert R. Powell; Dennis B. Ramsey; Curt D.
Ritza; A.M. Roman; Theresa E. Stephens; Steve E. Swan;
Clarence M. Tomes; Arthur A. Hernandez; Daniel J.
Manriquez; William Pike; James R. Ryan; Silas Abernathy,
Jr.; Fred Bauman; David R. Bedford; Bruce L. Benton;
Stephen R. Blanchard; John Bonadio; Oliver L. Duckworth;
James Edwards; Robert Stanley Fenton; James Galligan;
Craig Hackett; Daniel J. Holley; John A. Householder;
David Ireland; Herman Jackson; James T. Jackson; Michael
P. Murphy; Charles Olson; Anne L. Antrim-Quistgard; Alan
Hugh Renard; Fred Riske; David G. Robinson; Adrian O.
Stampley; Warren Thietje; Patrick Traynor; Mark Ullom;
James F. Wagner and Andrew P. Foltz, Plaintiffs,
v.
Constance NEWMAN, Director of Office of Personnel
Management, H. Lawrence Garrett, III, Secretary,
Department of Navy and United States of
America, Defendants-Appellees.
Scott L. ANDREEN, Rod R. Boultinghouse, Michael S. Davis,
Terry L. Gram, Richard V. Jones, Benjamin Luther, Frank R.
Nadolski, Eric R. Nelsen, Heiko Stopsack, Franco Stone and
Richard G. Stout, Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 Nos. 91-1238, 91-1309 and 91-5069.
 United States Court of Appeals,
Federal Circuit.
 Aug. 17, 1992.
 
 Greg W. Jones, Hathaway, Perrett, Webster, Powers & Chrisman, Professional Corp., Ventura, Cal., argued for plaintiffs-appellants in no. 91-1309. With him on the brief was Joseph C. Chrisman.
 Scott H. Park, Asst. U.S. Atty., Dept. of Justice, Los Angeles, Cal., argued for defendants-appellees in no. 91-1309. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Lourdis G. Baird, U.S. Atty. and Leon W. Weidman, Asst. U.S. Atty., Chief, Civil Div. Also on the brief was Jane W. Vanneman, Senior Trial Counsel, Commercial Litigation Branch, Washington, D.C., of counsel.
 Steven B. Frank, Frank & Rosen, Seattle, Wash., argued for plaintiffs-appellants in no. 91-5069.
 Jane W. Vanneman, Senior Trial Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellee in no. 91-5069. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were John Belser, Dept. of the Army, Washington, D.C. and Richard McCurdy, Dept. of the Army, Fort Lewis, Washington, of counsel.
 Alan C. Davis, Davis, Reno & Courtney, San Francisco, Cal., argued for plaintiffappellant in no. 91-1238. With him on the brief was Susan Byrnes.
 Jane W. Vanneman, Senior Trial Counsel, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellee in no. 91-1238. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were Kay Teeters, Dept. of the Navy, Walnut Creek, Cal., Mary Beth Vitti, Asst. U.S. Atty., San Francisco, Cal. and Bruce I. Waxman, Dept. of Commerce, Washington, D.C., of counsel.
 Before MICHEL, CLEVENGER and RADER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 Robert A. Muniz appeals the judgment of the United States District Court for the Northern District of California dismissing his complaint for lack of jurisdiction. Muniz v. United States, Civ. No. 89-1894 (N.D.Cal. Feb. 4, 1991). Jay E. Albrecht et al. appeal the judgment of the United States District Court for the Central District of California dismissing their complaint for lack of jurisdiction. Albrecht et al. v. Horner, No. CV-88-1816-HLH (C.D.Cal. Mar. 12, 1991). Scott L. Andreen et al. appeal the judgment of the United States Claims Court dismissing their complaint for lack of jurisdiction. Andreen et al. v. United States, No. 548-88C (Cl.Ct. Feb. 6, 1991).
 
 
 2
 Because the three appeals raise common issues of law, we consolidated them for decision. For the reasons set forth below, each of the appealed judgments is affirmed.
 
 
 3
 * The appealed cases involve present and former employees of the federal government whose terms and conditions of employment are or were governed by collective bargaining agreements. The agreements are or were between the agencies in which plaintiffs are or were employed and the unions to which they belong or belonged. Section 7121(a) of the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 7121(a) (1988), requires that all such agreements contain grievance procedures:
 
 
 4
 (a)(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability.... [T]he procedures shall be the exclusive procedures for resolving grievances which fall within its coverage.
 
 
 5
 Paragraph (2) of section 7121(a) however provides that "[a]ny collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement."
 
 
 6
 Appellants claim the right to have various kinds of pay computed under the Fair Labor Standards Act (FLSA), an issue they prefer to adjudicate in the courts. The trial courts dismissed their claims, reasoning that these FLSA pay claim disputes were not excluded from the dispute resolution processes provided by the grievance and arbitration procedures contained in the collective bargaining agreements.
 
 
 7
 In Carter v. Gibbs, 909 F.2d 1452 (Fed.Cir.1990) (in banc ), cert. denied sub nom. Carter v. Goldberg, --- U.S. ----, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990), this court held that the federal courts lack jurisdiction over an FLSA pay dispute not excluded from grievance and arbitration pursuant to section 7121(a)(2). The parties in Carter v. Gibbs agreed that the FLSA pay dispute in the case was a grievable matter and that the relevant collective bargaining agreement did not exclude the dispute from the grievance and arbitration procedures under section 7121(a)(2). This court thus was not required to delineate the interpretative standard to be applied in deciding whether a disputed issue is excluded by section 7121(a)(2), nor was it required to decide if claims of former employees arising from past employment under collective bargaining agreements are still limited by the exclusivity provisions of section 7121(a)(1). These issues are ripe for decision in these consolidated cases.
 
 II
 
 8
 Muniz was formerly employed by the Department of the Navy as a fire fighter. Upon his separation from government service due to retirement, he was entitled, under 5 U.S.C. § 5551(a) (1988), to a lump sum payment for his accumulated annual leave. The lump sum payment proffered to Muniz did not include his customarily and regularly received FLSA overtime pay pursuant to 29 U.S.C. § 207(k) (1988). Muniz brought suit in the district court to correct the alleged error in computation of his lump sum payment. The government conceded error in the computation but moved to dismiss the case for lack of jurisdiction because Muniz's claim to FLSA entitlement was not excluded from the grievance and arbitration procedures in the collective bargaining agreement to which Muniz had been subject. Citing Carter v. Gibbs and concluding that Muniz's agreement did not contain "adequately specific" language to exclude Muniz's claim from grievance and arbitration, the district court dismissed the complaint for lack of jurisdiction.
 
 
 9
 The issue thus is not whether Muniz is entitled to a properly calculated lump sum payment, but whether the path to achieving that result, under section 7121(a) of the CSRA, is the judicial or the arbitral process. If Muniz's collective bargaining agreement as a matter of statutory exclusivity requires arbitration of the FLSA issue, the question then is whether Muniz, as a former employee, escapes the grasp of statutory exclusivity.
 
 
 10
 * Whether the district court possesses jurisdiction to hear Muniz's claim is a matter of law, which we review de novo. See Zumerling v. Marsh, 783 F.2d 1032, 1034 (Fed.Cir.1986). The root of that matter is, of course, the correct legal interpretation of the collective bargaining agreement pursuant to which Muniz was employed by the Navy. That issue is also a question of law, subject to our de novo review on appeal. See Bonner v. Merit Sys. Protection Bd., 781 F.2d 202, 205 (Fed.Cir.1986).
 
 
 11
 A full understanding of Carter v. Gibbs is the necessary predicate to examination of the language in Muniz's collective bargaining agreement. Carter v. Gibbs unswervingly endorses the proposition that mandatory dispute resolution procedures contained in a federal collective bargaining agreement constitute the exclusive means for resolution of disputes grievable under the agreement, unless the negotiated terms of the agreement exclude the dispute from the agreement's dispute resolution processes. Carter v. Gibbs also teaches that implied exclusions from the exclusive dispute resolution mechanism are disfavored. Carter, 909 F.2d at 1455. As this court explained in detail, citing Lindahl v. Office of Personnel Management, 470 U.S. 768, 773, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674 (1985), the Congressionally unambiguous and unmistakable preference for exclusivity of arbitration is a central part of the comprehensive overhaul of the civil service system provided by the CSRA. Carter, 909 F.2d at 1455-56. That comprehensive overhaul has in turn barred parallel remedies in the courts for resolution of disputes arising from collective bargaining agreements. See Karahalios v. National Fed'n of Fed. Employees, Local 1263, 489 U.S. 527, 535, 109 S.Ct. 1282, 1287-88, 103 L.Ed.2d 539 (1989); United States v. Fausto, 484 U.S. 439, 445, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988).
 
 
 12
 Our sister circuits have followed the many teachings of the Supreme Court regarding the emphatic nature of the exclusivity provisions stated in the CSRA. See Montplaisir v. Leighton, 875 F.2d 1, 3 (1st Cir.1989) and cases cited therein ("The circuits have been equally as forthcoming; in a variety of settings, they have followed the Court's lead and treated CSRA as establishing the sole mechanism for resolving labor conflicts in the federal arena."). Moreover, this court has respected "the Supreme Court's admonitions to leave the architecture of the federal personnel system to Congress," Volk v. Hobson, 866 F.2d 1398, 1403 (Fed.Cir.), cert. denied, 490 U.S. 1092, 109 S.Ct. 2435, 104 L.Ed.2d 991 (1989), by "abstain[ing] completely from inventing other remedies when Congress has set up a complete, integrated statutory scheme." Id. at 1402. The CSRA, as construed by the Supreme Court, thus necessarily will bar aggrieved employees from resolution in the trial courts of many of their disputes.
 
 B
 
 13
 Against the background of Carter v. Gibbs, we must now examine and interpret Muniz's collective bargaining agreement. Articles 10 and 11 of that agreement establish the grievance and arbitration procedures, which all agree serve as the exclusive procedure available to the parties and employees. Article 10, section 1.b. states that "[m]atters excluded from this Article and arbitration are included in Appendix A to this Agreement." Appendix A sets forth 14 specific grievable matters that are "excluded from the negotiated grievance procedures and arbitrations." Among the 14 items is one related to compensation, number 11, "Injury Compensation." Compensation for accumulated annual leave payable upon separation, the issue in this case, is not expressly excluded by Appendix A.
 
 
 14
 Muniz contends, nonetheless, that his compensation claim, while not expressly excluded in Appendix A, is impliedly excluded from the otherwise mandatory exclusive grievance and arbitration remedy because language contained in Article 11, concerning arbitration procedures, appears to limit the authority of the arbitrator. Article 11, section 5 provides that:
 
 
 15
 Arbitration may not extend to the interpretation or change of Navy or higher authority policies or regulations, nor changes or proposed changes in agreements. Similarly arbitration shall not change, modify, alter, delete or add to the provisions of this Agreement as such right is the prerogative of the contracting parties only. The arbitrator will only have the authority to interpret and apply bilaterally negotiated provisions of this Agreement. He shall not have the authority to decide matters in this Agreement involving the interpretation or application of Navy or higher authority policies, regulations or laws regardless of whether such policies, regulations or laws are quoted, paraphrased, cited or otherwise referenced in this Agreement.
 
 
 16
 In Muniz's view, his grievable compensation claim could not have been arbitrated properly because under Article 11, section 5, the arbitrator lacked the authority to decide matters involving the interpretation or application of the FLSA to his claim. Consequently, any grievable matter that raises any issue concerning the interpretation or application of any law or regulation is necessarily excluded, for purposes of section 7121(a)(2), from the otherwise exclusive arbitration remedy. The government correctly argues that Muniz's view, if accepted, leaves the dispute resolution process in the agreement in shambles, because any issue in grievance or arbitration apparently could be removed from the process at any time by an alleged need to construe or apply a law or regulation. Whether an FLSA pay claim in dispute is subject to or excluded from arbitration would therefore not depend on the nature of the claim in dispute. All such claims would be arbitrable if a legal issue were not raised.
 
 
 17
 We agree with Muniz that the meaning of a collective bargaining agreement is to be derived from its reading as a whole, and that section 7121(a)(2) exclusions need not always be as specifically listed as those in Appendix A to Muniz's agreement. See Bonner, 781 F.2d at 205. But we also agree with the government that Muniz's reading of Article 11, section 5 produces a potential result wholly inconsistent with the stated intent of the parties 91-1238, 91-1309, 91-5069 in Article 10 to resolve workplace-derived disputes by grievance and arbitration. Section 3 of Article 16, for example, provides that employees "should accrue annual leave in accordance with existing applicable laws and regulations," and section 6 of that article allows carry-over of leave "in accordance with applicable laws and regulations." Disputes about annual leave, including the laws and regulations used to compute such leave, are directed by Article 10 to the grievance and arbitration processes. In light of the interplay between Articles 10 and 16, Muniz's reading of Article 11, section 5 thus creates ambiguity as to which matters were intended to be included in or excluded from the statutorily mandated grievance and arbitration processes.
 
 
 18
 Carter v. Gibbs and the precedent upon which it rests, however, require us to conclude that the parties to the agreement must explicitly and unambiguously express in the words of the contract their intent to exclude the matter from the grievance and arbitration processes in order for an exclusion to satisfy section 7121(a)(2). Muniz's collective bargaining agreement taken as a whole fails to satisfy that test, and his claim for recomputed annual leave cannot be deemed excluded from the statutorily mandated dispute resolution processes agreed to by the parties.
 
 C
 
 19
 The remaining issue in Muniz's appeal is whether the jurisdictional bar is removed by his retirement and consequent status as a nonemployee at the time his suit was filed.
 
 
 20
 On this point, Muniz's contentions are simple and straightforward: first, only current employees, not retirees, are subject to the CSRA and second, he was not a current employee when his claim arose. We must disagree with both contentions.
 
 
 21
 Section 7121(a) of the CSRA governs grievance procedures for federal employees, and section 7103(a)(9) defines "grievance" as "any complaint ... by an employee concerning any matter relating to the employment of the employee[.]" 5 U.S.C. § 7103(a)(9) (1988). Muniz's collective bargaining agreement refers in Article 10, section 1, to "grievances of employees"; section 7103(a)(2) of the CSRA defines an employee as an individual "employed in an agency ... or whose employment in an agency has ceased as a result of any unfair labor practice[.]" 5 U.S.C. § 7103(a)(2) (1988). These definitional provisions, however, do not indicate whether the dispute resolution processes of a collective bargaining agreement can apply to retired former employees. We must look instead to provisions of the statute that afford remedies to retired employees. Such provisions demonstrate that retirees are not excluded from the reach of the CSRA because of their nonemployment status. For example, retirees are in many instances permitted to rearrange spousal survivor annuity benefits afforded by the CSRA. See 5 U.S.C. § 8339(k)(2)(A), (j)(5)(A), (j)(5)(C), (o )(1)(A) (1988); see also 5 C.F.R. §§ 831.612, .613 (1992). Retirees similarly may alter various life and health insurance benefits provided by the CSRA. See 5 U.S.C. §§ 8706(b)(4), 8905(e) (1988). Employees also may apply for CSRA disability retirement benefits after they have been separated from service. See, 5 U.S.C. § 8337 (1988). Consequently, the fact that Muniz is retired can not alone establish that he is beyond the reach of the CSRA.
 
 
 22
 We agree with Muniz on the proposition that he is only subject to the dispute resolution processes of the collective bargaining agreement if his claim arose while he was an employee subject to the agreement. To determine when the claim to the lump sum payment arose, we must decide the nature of this claim. To do so, we must consider the holdings of the Supreme Court in Nolde Bros., Inc. v. Local No. 358 Bakery & Confectionery Workers Union, AFL-CIO, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977) and Litton Fin. Printing Div. v. National Labor Relations Bd., --- U.S. ----, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991).
 
 
 23
 The circumstances in Nolde are comparable to those in this case. Both involve collective bargaining agreements that cover claims for compensation payable upon severance. In Nolde, the collective bargaining agreement expired, and negotiations over a new agreement ceased when the employer, faced with a strike threat, closed its plants and terminated the employment status of the employees. In so doing, the employer refused to pay the former employees the severance pay to which they could lay claim under the agreement. The union, on behalf of the former employees, unsuccessfully demanded severance pay and the employer refused to arbitrate the dispute. The district court refused to compel arbitration of the issue, reasoning that the arbitration remedy died with the contract. The court of appeals reversed on the theory that the arbitration remedy survived termination because the claims in issue arose before termination of the employment status. The Supreme Court granted certiorari to determine if the severance pay claims of the union members, persons similarly situated to Muniz, were arbitrable. Nolde Bros., Inc. v. Local No. 358 Bakery & Confectionery Workers Union, AFL-CIO, 425 U.S. 970, 96 S.Ct. 2165, 48 L.Ed.2d 793 (1976).
 
 
 24
 The Supreme Court held that the parties' agreement to arbitrate survived termination of the contract with regard to the claim for severance pay. The Court characterized that claim as deferred compensation, the right to which accrued and vested during employment but the payment of which would be occasioned only after termination. Nolde, 430 U.S. at 248, 97 S.Ct. at 1070. The Supreme Court stated that the "parties' obligations under their arbitration clause survived contract termination when the dispute was over an obligation arguably created by the expired agreement," id. at 252, 97 S.Ct. at 1072, and thus concluded that the arbitration remedy must be available to resolve a dispute that arose after expiration of a contract, when the claim depended upon a right which had accrued and vested during employment. Id. at 255, 97 S.Ct. at 1074.
 
 
 25
 In reaching that conclusion, the Supreme Court stated that it
 
 
 26
 has established a strong presumption favoring arbitrability:
 
 
 27
 [T]o be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration ... [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. [United Steelworkers v.] Warrior & Gulf Nav. Co., [363 U.S. 574] at 582-583 [80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) ].
 
 
 28
 Nolde, 430 U.S. at 254-55, 97 S.Ct. at 1073-74. Finally, the Supreme Court noted that the Nolde contract, like Muniz's, did not exclude claims of former employees from arbitration. Id. at 255, 97 S.Ct. at 1074.
 
 
 29
 The Supreme Court had occasion recently to revisit Nolde in Litton Financial, which also questioned whether claims of former employees must be resolved by the arbitration machinery of an expired contract. The issue in Litton was a layoff grievance and the circumstances under which layoffs could be effected after the contract terminated. Unlike the deferred compensation issue in Nolde, the Supreme Court held that the layoff issue involves matters of aptitude and ability which do not remain constant, but vary over time. Hence, such matters could not be said "to vest or accrue or be understood as a form of deferred compensation." Litton, 111 S.Ct. at 2227. The layoff conditions thus would continue to change after termination of the contract, unlike the non-variable accumulation of entitlements to severance pay. Refusing to extend Nolde to the facts in Litton, the Supreme Court restated the holding of Nolde:
 
 
 30
 The Nolde Bros. presumption [of arbitrability] is limited to disputes arising under the contract. A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, ....
 
 
 31
 Litton, 111 S.Ct. at 2225.
 
 
 32
 Muniz's claim is under 5 U.S.C. 5551(a) (1988) for a lump sum payable after separation from service for leave accrued during employment. The facts and occurrences forming the basis for his claim happened during his employment. The action taken after separation in calculating the lump sum payment infringed Muniz's accrued and vested rights. Because Muniz's claim to the lump sum payment due upon severance is based upon rights that accrued and vested during employment, we must hold that his claim arose during the course of his employment under the agreement. When the dispute in question involves a claim which arose during employment, that dispute can only be removed from the grievance and arbitration processes by the explicitly and unambiguously declared intention of the parties.
 
 
 33
 Finally, we must disagree with Muniz's contention that his claim, made after retirement, is excluded by section 7121(c)(2) of the CSRA from the subject matter of his collective bargaining agreement. 5 U.S.C. § 7121(c)(2) (1988). Section 7121(c) specifically excludes from the scope of collective bargaining agreements five discrete subject matter categories, one of which is "retirement, life insurance, or health insurance". Muniz argues that any grievance concerning the status of retirement must be excluded from the grievance and arbitration provisions of the agreement.
 
 
 34
 The legislative history of the section states that "retirement, life insurance, or health insurance" refers to the amounts of "fringe benefits ... [which] will continue to be set by Congress." H.R.Rep. No. 1403, 95th Cong., 2d Sess. 12 (1978); 124 Cong.Rec. H8462 (Aug. 11, 1978) (remarks by Congressman Udall). Although Congress reserved the authority to set the amounts payable as fringe benefits upon retirement, it did not exclude from the grievance and arbitration process those disputes over an individual's entitlement to particular benefits enacted by Congress. Muniz's claim does not seek to negotiate the amount of FLSA overtime pay to which he is entitled. That amount is agreed upon. Rather, Muniz's complaint is that the agency miscalculated his lump sum payment. That claim is not a grievance related to the setting of the benefit and consequently is not excluded from the agreement under section 7121(c)(2).
 
 
 35
 We therefore affirm the judgment of the district court dismissing Muniz's complaint for lack of subject matter jurisdiction.
 
 
 36
 Muniz has yet to pursue his claim by grievance and arbitration. We consequently can not decide whether the district court was correct in stating that Muniz, as a former employee, "can still take his grievance to the arbitrator." The government argued before the district court that since Muniz's benefit arose from previous employment, he could still proceed to arbitration. The availability of grievance and arbitration machinery, either under an expired contract or for a former employee under an ongoing contract, is not uncommon. The Federal Labor Relations Authority (FLRA), the agency charged with administering the CSRA, has recognized that claims of former employees based on disputes arising under the contract are arbitrable. See Social Sec. Admin., Mid-Am. Program Serv. Ctr. Agency and Am. Fed'n of Gov't Employees, Local 1336 Union, 26 Fed.Lab.Rel.Auth. 292 (Mar. 18, 1987); United States Mint, Washington, D.C. and Am. Fed'n of Gov't Employees, AFL-CIO, Local 695, 31 Fed.Lab.Rel.Auth. 781 (Mar. 11, 1988).
 
 
 37
 Individual arbitrators have also concluded that the termination of employee status does not serve to exclude disputes from arbitration when those disputes concern rights or benefits accrued during employment. In South Lyon Bd. of Educ., 86 Lab.Arb.Rep. (BNA) 398 (1985) and in Dover Corp., 48 Lab.Arb.Rep. (BNA) 965 (1966) former employees filed grievances for accumulated sick leave and vacation pay, respectively--claims very similar in nature to Muniz's claim. In South Lyon, the arbitrator denied the school board's motion to dismiss, holding that retirees were entitled to file a grievance under the collective bargaining agreement if they alleged a benefit or interest which accrued to them by virtue of their prior employment. 86 Lab.Arb.Rep. (BNA) at 402; accord Dover, 48 Lab.Arb.Rep. (BNA) at 968; see also San Francisco Community College Dist., 92 Lab.Arb.Rep. (BNA) 108 (1988) (former employee's grievance involving part-time teaching is arbitrable); Hudson Tool and Mach. Co., 21 Lab.Arb.Rep. (BNA) 431 (1953) (former employee is entitled to union representation and union has obligation to represent employee, on grievances which arose during former employee's service or on claims based upon such service).III
 
 
 38
 The Albrecht appellants are current and former GS-11 civilian employees of the Department of the Navy at either the Pacific Missile Test Center at Point Mugu, California, or the Naval Ship Weapon Engineering Station at Port Hueneme, California. They are or were members of the National Association of Government Employees (NAGE). NAGE and the Navy negotiated collective bargaining agreements to which appellants are or were subject. At Point Mugu, such agreements were reached in 1982 and 1989; at Port Hueneme, in 1982, 1985 and 1989.
 
 
 39
 In November and December of 1985, the Navy reclassified appellants as FLSA exempt, an act which removed appellants' entitlement to overtime pay under FLSA. The Navy acted pursuant to an Office of Personnel Management (OPM) regulation that created a rebuttable presumption of FLSA exclusion of employees classified at GS-11 or above. 5 C.F.R. § 551.203(c) (1985). Appellants were each notified of their change in status and afforded an opportunity to challenge the reclassifications. Subsequently, OPM's rebuttable presumption regulation was invalidated by American Fed'n of Gov't Employees v. Office of Personnel Management, 821 F.2d 761 (D.C.Cir.1987). When the Navy refused to reverse the appellant's 1985 reclassifications, they brought suit in the district court for back pay to which they would have been entitled under the FLSA, absent their unlawful 1985 reclassification. The district court found that the appellants were subject to collective bargaining agreements which did not exclude the FLSA pay dispute from arbitration. The court further found that the claims of the former employees arose during their employment. Therefore, the district court granted the government's motion to dismiss the complaints for lack of jurisdiction.
 
 
 40
 As in Muniz, the questions before us are whether the FLSA dispute of the plaintiffs is excluded from the statutorily mandated arbitration resolution process and, if not, whether the former employees are compelled to use the arbitration process. As to the first question, there is a threshold issue, briefed but not argued. At the time of the 1985 reclassification, no signed collective bargaining agreement was in effect at the Point Mugu facility since the 1982 agreement expired on February 4, 1985, and was not formally replaced until October 19, 1989. We thus must review the decision of the district court that the course of conduct between the Point Mugu appellants and their employer proved their intent to be bound by the provisions of the 1982 collective bargaining agreement until its replacement was formally executed in 1989.
 
 
 41
 * The threshold issue was identified by the district court in its November 5, 1990 minute order continuing the motion of the government for summary judgment. Because the Point Mugu collective bargaining agreement expired on February 4, 1985, the court noted that:
 
 
 42
 The matter of the hiatus in the Point Mugu CBA is the most important problem to clean up. If, in fact, there was no CBA in that period, the CSRA as interpreted in Carter FedCir '90 909 F.2d 1452 would not obviate this action. Declarations are requested which illuminate whether there is a triable issue of fact in this matter. Particularly, evidence on whether there were processed grievance and arbitration proceedings for claims arising during this period would be particularly material.
 
 
 43
 On January 28, 1991, the court entered another minute order granting the government's motion for summary judgment:
 
 
 44
 The principal problem was that the Point Mugu CBA had an apparent hiatus, since its terms proclaimed a CBA ending date of 2/4/85 and the new CBA was not effective until 10/19/89. The government in its reply memorandum ... took the position that the CBA in fact remained in effect during the "hiatus period". The matter was continued to allow the plaintiffs to reply to that position. Plaintiffs have submitted no facts to contradict the Navy position. Defendant has submitted an abundance of additional facts to support its position. During the "hiatus period", there is uncontradicted evidence that the CBA remained in effect, with the union submitting numerous grievances which were handled pursuant to the grievance-arbitration procedure of the CBA. Some of these were taken to arbitration under the CBA. All of this is consistent with the usual labor law rule that a CBA remains in existence following expiration of the date stated in the contract while the duty to negotiate in good faith for a new contract remains in effect. The period that the old CBA remains in effect depends on the facts of the particular case. Here, the evidence is uncontradicted that the collective bargaining representatives (which changed during the period) and the Navy acted on the assumption that the grievance-arbitration procedure remained in effect, and there is no evidence to the contrary.
 
 
 45
 The record on appeal contains reference to a wide variety of work-related issues that were grieved and in some instances arbitrated during the hiatus period. In calendar 1986, 42 such matters are referenced, including 14 involving overtime pay disputes unrelated to the FLSA. In each of fiscal years 1987, 1988 and 1989, the record reveals respectively 42, 38 and 39 grievances filed. In addition, consistent with Article 8 of the 1982 agreement requiring the parties to bargain over proposed "changes in personnel policies, practices or matters affecting working conditions", the parties negotiated several changes in working conditions during the hiatus period. Furthermore, the Point Mugu labor relations officer stated in her declaration that "both the [N]avy and the union adhered to the provisions of the 1982 collective bargaining agreement and that agreement continued to control the conduct of labor relations at Point Mugu."
 
 
 46
 Notwithstanding the substantial and uncontroverted evidence that the conduct of the parties demonstrates the continued existence of the 1982 agreement, the Albrecht appellants contend that there was no agreement in effect because there is no proof that any of the named appellant/plaintiffs filed a grievance during the hiatus, or that any person filed an FLSA overtime pay grievance during that period. Appellants thus attempt on appeal to introduce evidence, in the form of alleged non-actions, to demonstrate a lack of intent to extend the effectiveness of the 1982 agreement. We do not credit the allegations, because whether an expired agreement remains in effect cannot turn on the pursuit by a particular employee of a particular grievance under the provisions of the contract.
 
 
 47
 Furthermore, the parties' conduct at Point Mugu is consistent with decisions of the FLRA holding that negotiated grievance procedures continue in effect after expiration of the agreement. As the FLRA stated in United States Gov't Printing Office and Joint Council of Unions, 29 Fed.Lab.Rel.Auth. 1272, 1279 (1987):
 
 
 48
 [E]xisting personnel policies, practices, and matters affecting working conditions ... continue to the maximum extent possible, upon the expiration of a negotiated agreement, absent an express agreement to the contrary....
 
 
 49
 Accord Federal Aviation Admin. Northwest Mountain Region and Fed. Aviation Admin. Washington D.C., 14 Fed.Lab.Rel.Auth. 644 (1984). The many rulings of the FLRA recognizing the continuation of grievance and arbitration procedures after termination can be traced to a full statement by the FLRA in 1980 of the underlying rationale and policy:
 
 
 50
 In the Authority's view, the purposes and policies of the Statute are best effectuated by a requirement that the existing personnel policies and practices and matters affecting working conditions--including negotiated grievance and arbitration procedures--must continue as established upon the expiration of a negotiated agreement, absent an express agreement by the parties to the contrary or unless modified in a manner consistent with the Statute. Such conclusion fosters desirable stability in Federal labor-management relations; is consistent with the established framework of the Statute which provides for the peaceful resolution of bargaining disputes; and "facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment," which is an underlying purpose of the Statute.
 
 
 51
 Department of Air Force, 35th Combat Support Group, George AFB and Nat'l Fed'n of Fed. Employees Local 977, 4 Fed.Lab.Rel.Auth. 22, 23 (1980); accord United States Nuclear Regulatory Comm'n and Nat'l Treasury Employees Union, 6 Fed.Lab.Rel.Auth. 18, 19-20 (1981).
 
 
 52
 The FLRA's decisions read directly on the parties' conduct at Point Mugu during the hiatus period and the uncontroverted evidence demonstrates that the 1982 agreement continued in effect. Thus, we will not disturb the finding of the district court that the grievance procedures of the 1982 agreement remained in effect during the hiatus period.
 
 B
 
 53
 The Albrecht appellants refer to five collective bargaining agreements, two for Point Mugu (1982 and 1989) and three for Port Hueneme (1982, 1985 and 1989). Each of the Point Mugu contracts contains an express provision relating to overtime pay. The 1982 contract, in Article 19, section 1, provided that employees "will be compensated for overtime in accordance with Title V, U.S.Code, or the Fair Labor Standards Act, as amended, whichever is appropriate." Section 8 of Article 19 provided that "[w]hen the employer changes an employee's Fair Labor Standards Act Status from non-exempt to an exempt status, the employer will provide to the employee the proper forms, written appeal procedures and addresses of the regional Office of Personnel Management." The 1989 agreement repeated each of these provisions in slightly modified language. Both Point Mugu agreements established exclusive grievance and arbitration procedures "for resolving all grievances," and both expressly excluded certain issues from the exclusive procedures. Neither agreement purported to exclude, by any language in the agreements, any matter relating to any form of direct compensation, including overtime compensation.
 
 
 54
 Like the Point Mugu contracts, each of the three Port Hueneme contracts contained express grievance and arbitration procedures. Except for specific exclusions enumerated in the contracts, those procedures are the "only procedure[s] available" to resolve disputes arising under the contracts. Each contract contained specific exclusions, none of which relate in any way to the FLSA dispute in this case.
 
 
 55
 The district court found no language in any agreement which indicated any intention, even ambiguous or implied, to exclude the FLSA overtime claims from the exclusive arbitration procedures. Citing Carter v. Gibbs, the court consequently held that it lacked jurisdiction and dismissed the complaint.
 
 
 56
 * With regard to the Point Mugu contracts, appellants argue that FLSA claims are exempt from the exclusive grievance and arbitration provisions because the contract procedures governing change in status from FLSA nonexempt to exempt included forms that advised employees of the right to challenge such status changes in the United States district courts. The existence of such contract procedures in contracts written before Carter v. Gibbs is not surprising. Until Carter v. Gibbs, it was possible to assume that FLSA claims arising under collective bargaining agreements could be litigated in the district courts. After Carter v. Gibbs, it is not possible to sustain that assumption. Claims arising under collective bargaining agreements must be excluded from mandatory exclusive grievance and arbitration procedures in order for the courts to have jurisdiction to hear such claims. Furthermore, as we hold today, such an exclusion must be explicit and unambiguous.
 
 
 57
 Appellants further rely upon language in Article XXXII, section I of the 1989 Point Mugu labor agreement to support their claim that FLSA matters are excluded from the grievance procedure. That provision states:
 
 
 58
 The scope of this grievance procedure will include any matter of concern relating to employment of employees except as prohibited by law or described below.
 
 
 59
 Appellants then cite Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), for the proposition that FLSA rights are statutorily guaranteed and, by law, cannot be surrendered. Accordingly, appellants contend that the quoted language from the 1989 contract excludes FLSA claims from the grievance procedure, because to deny court resolution of FLSA claims is "prohibited by law."
 
 
 60
 This argument, however, was flatly rejected by the in banc decision in Carter which held that judicial review of FLSA claims arising under a collective bargaining agreement is not available unless the agreement excludes the claim from the arbitration process. Therefore, under Carter v. Gibbs, barring judicial review of non-excluded FLSA claims cannot constitute an action prohibited by law. As this court noted, the comprehensive revision of the civil service laws accomplished by the CSRA did not deprive employees of their rights to pursue FLSA claims. Carter, 909 F.2d at 1455. The only question is whether, under the collective bargaining agreement, those rights must be pursued in the administrative, rather than the judicial, arena. Id.; Harris v. United States, 841 F.2d 1097, 1100 (Fed.Cir.1988); accord Karahalios, 489 U.S. at 535-36, 109 S.Ct. at 1288 (CSRA does not deprive employees of any judicial remedies otherwise provided even though the negotiated collective bargaining agreement may).
 
 
 61
 In this case, the parties have made their choice. The Point Mugu collective bargaining agreements do not exclude FLSA claims from the scope of the negotiated grievance procedure. Therefore, the Point Mugu appellants must enforce their FLSA rights through the grievance procedure, not in federal district court.
 
 2
 
 62
 With regard to the Port Hueneme contracts, appellants advance three reasons to avoid the exclusivity of the grievance and arbitration processes, two of which have been rejected above with regard to the Point Mugu contracts.
 
 
 63
 Although the Port Hueneme contracts do not contain the express overtime pay clauses found in the Point Mugu contracts, and consequently do not reference procedures to inform employees of avenues for challenge to FLSA status change decisions, the Port Hueneme employees were also advised of a right to challenge the FLSA status change in the district court. The Port Hueneme appellants contend that they may exercise an implied contract right to resolve their FLSA pay dispute in the district court. We have explained above why the pre-Carter v. Gibbs expectations of the parties cannot create an exception to the exclusivity provisions in the contracts.
 
 
 64
 Further, each of the Port Hueneme contracts includes language in the grievance procedures article stating that:
 
 
 65
 This article is the only procedure available for the settlement of complaints and grievances ... except as required by law ....
 
 
 66
 Appellants submit that "except as required by law" must be read to exclude FLSA claims from the otherwise exclusive dispute resolution procedures, because 29 U.S.C. § 216(b) (1988) grants employees the right to bring FLSA actions in the federal district courts. This argument fails on the same ground as the "except as prohibited by law" argument made on the Point Mugu contracts.
 
 
 67
 Finally, appellants cite Article 6, section 3 of the 1982, 1985 and 1989 agreements, which provides that grievances must be over matters within the "control of the employer," in contending that FLSA status determinations are not within the control of the employer, and therefore are beyond the scope of the grievance procedure. This contention, however, overlooks the difference between promulgation and implementation of such status determinations. Even if a regulation affecting the FLSA status of an employee is not promulgated by the employer, the employer has the authority to apply such a regulation to individual employees. See American Fed'n of Gov't Employees v. Office of Personnel Management, 21 F.2d at 771 (employees ineligible for FLSA overtime compensation after employing agency invokes OPM's presumptive regulation). In this case, the dispute is not with OPM, which originally promulgated the now invalidated regulation. The dispute instead is over the Navy's unwillingness to reverse the application to the appellants of the invalidated regulation.
 
 
 68
 We thus conclude that none of the contracts involved in the Albrecht appeal explicitly and unambiguously exclude the FLSA claims from the exclusive grievance and arbitration procedures in the contracts.
 
 C
 
 69
 Certain of the Albrecht appellants were not, as of the filing of the complaint, members of the collective bargaining unit, having been promoted or reassigned or having retired. As to them, the same arguments are advanced that we have considered and disposed of in the Muniz appeal. In this case, there is no doubt that the appellants' claims arose as a result of the reclassifications which occurred during a time when, we have held, a collective bargaining agreement was in effect. Furthermore, it is clear that the claims of the former Point Mugu employees arose while they were employed under a contract expressly including matters relating to computation of overtime pay, and also expressly providing that the grievance procedures would not be terminated as to grievances of former employees which raised compensation issues.
 
 
 70
 We therefore conclude that the former employee status of certain appellants does not remove the jurisdictional bar that denied them access to the district courts to adjudicate their FLSA claims. We decline the invitation of the Albrecht appellants to reconsider and overrule Carter v. Gibbs. We also reject the contention that FLSA claims can not involve "conditions of employment" under the CSRA, because the holding of Carter v. Gibbs depends upon FLSA claims being conditions for employment. The judgment of the district court dismissing the complaint for lack of subject matter jurisdiction is affirmed.
 
 IV
 
 71
 The Andreen appellants are 11 currently employed paramedic and emergency medical technicians at Madigan Army Medical Center (MAMC) in Tacoma, Washington. At all times relevant to the litigation, the appellants have been subject to a collective bargaining agreement between MAMC and the union to which appellants belong.
 
 
 72
 The nature of appellants' work requires many hours spent on stand-by status while awaiting the call to emergency duty. In September of 1986, MAMC revised the work schedules of the appellants and changed the basis upon which they were awarded stand-by premium pay for overtime, night, holiday and Sunday work. MAMC also determined, for purposes of calculating appellants' straight overtime pay under the FLSA, that certain hours for sleep and meal periods did not count as hours worked for overtime hour calculations.
 
 
 73
 Appellants contend that since 1986 they have not been awarded the greater amount of premium pay to which they are entitled, and that due to interruption of their sleep and meal periods during overtime they are entitled to enhanced FLSA overtime pay. These premium pay and overtime pay claims, which arose during employment under the collective bargaining agreement, constitute the two disputes in this case.
 
 
 74
 Andreen and his ten co-workers brought suit in the Claims Court to recover the premium and overtime pay allegedly due. The Claims Court, citing Carter v. Gibbs, granted the government's motion to dismiss for lack of subject matter jurisdiction. The Andreen appellants renew their section 7121(a)(2) arguments in this court. As in Muniz and Albrecht, the issue before the court is whether the applicable collective bargaining agreement by its terms excluded the premium and overtime pay disputes from the otherwise exclusive arbitration process.
 
 
 75
 Article 18 of the relevant collective bargaining agreement sets forth the complaint and grievance procedures. Article 19 provides for arbitration if a grievance is not resolved under the provisions of Article 18, which specifies in section 1.A. that:
 
 
 76
 This procedure is the sole procedure for a unit employee, the union or management to grieve. This procedure covers application and interpretation of this agreement and all matters provided for in Chapter 71 of Title 5 US Code except as listed below. On matters not covered by the negotiated grievance procedure, employees must use the Department of Army or other procedure available for such issue(s).
 
 
 77
 Section 1.B. of Article 18 sets forth the 14 issues expressly excluded from the grievance procedure. Only one of the exclusions found in section 1.B. is pertinent to our inquiry. Section 1.B. (1) specifically excludes from the grievance procedure the following issue: "interpretation of any agency (e.g., MAMC, HSC, SGO or DOD) regulation, provision(s) of law or regulations of authorities outside the agency."
 
 
 78
 * The Andreen appellants maintain that their premium pay dispute is excluded from the otherwise mandatory grievance and arbitration procedures because premium pay is not specifically mentioned in the agreement. Thus, in the absence of a specific reference, premium pay is not a matter covered in the "application and interpretation" of the agreement. Furthermore, the appellants note that premium pay is not specifically mentioned in Chapter 71 of Title 5.
 
 
 79
 The agreement does not refer specifically to premium pay. It does, however, expressly provide in Articles 9 and 10 for overtime pay. The premium pay claim in part relates to the amounts of overtime, as defined in the agreement, earned by the appellants. The admitted relationship between overtime pay and a portion of the premium pay claim should not, according to the appellants, cause the premium pay issue to be included in the scope of the agreement, because premium pay also includes entitlements arising from Sunday, night and holiday hours worked. The agreement does not specify that hours worked at those times are included in or excluded from the definition of overtime contained in the agreement. We are thus presented with an ambiguity as to whether the part of a premium pay claim that is not a claim for overtime pay is impliedly excluded from the agreement because it is not specifically referenced in the agreement's terms.
 
 
 80
 Chapter 71 of Title 5, like the collective bargaining agreement, does not expressly mention premium pay as a matter provided for therein. Section 7103(a)(9) in Chapter 71, however, defines a grievance as any complaint by any employee "concerning any matter relating to the employment of the employee." U.S.C. § 7103(a)(9) (1988). We hold today that grievances which are cognizable under section 7121(a)(1) and are not explicitly and unambiguously excluded by the parties under section 7121(a)(2) from the agreement's compulsory grievance and arbitration procedures are exclusively subject thereto. Consequently, Chapter 71 provides for matters that qualify, absent proper exclusion, for consideration under an agreement's mandatory exclusive dispute resolution processes.
 
 
 81
 The Andreen appellants' interpretation of the agreement would include in the mandatory grievance procedure only matters which are specifically referenced in the collective bargaining agreement or specifically provided for in Chapter 71. But this interpretation would render a significant portion of section 1.B. of Article 18 meaningless. For example, section 1.B. lists fourteen specific exclusions from the grievance procedures. Of the fourteen exclusions listed, at least seven are not otherwise specifically referenced in the agreement outside the grievance and arbitration articles, or in Chapter 71. The seven exclusions are: the interpretation of regulations; the non-adoption of a suggestion; the requirement to submit to a fitness for duty examination; any claimed violation relating to prohibited political activity; retirement, life insurance or health insurance; any examination, certification or appointment; and findings of pecuniary liability for damage to government property. Under the appellants' interpretation, these seven specific matters were never included within the grievance procedure pursuant to section 1.A. because they are not specifically referenced in the agreement or provided for in Article 71. Given that conclusion, the specific exclusion of these matters from the grievance procedure in section 1.B. is therefore wholly superfluous.
 
 
 82
 Collective bargaining agreements are of course contracts governed by the rules of contract interpretation. See, e.g., Bonner, 781 F.2d at 205. A cardinal rule of contract interpretation requires that an interpretation which gives meaning to all parts of a contract will be preferred to one which leaves a portion of it useless, inoperative, meaningless or superfluous. Hol-Gar Mfg. Corp. v. United States, 169 Ct.Cl. 384, 351 F.2d 972, 979 (1965); accord Raytheon Co. v. United States, 2 Cl.Ct. 763, 770 (1983) aff'd, 730 F.2d 1470 (Fed.Cir.1984). Appellants' interpretation, which renders half of the exclusions in section 1.B. superfluous, must be rejected in favor of an interpretation that gives meaning to all of the agreement's provisions. Only by construing section 1.A. to encompass the broad definition of grievance found in Chapter 71 can meaning be given to all the exclusions in section 1.B.
 
 
 83
 Nor may the course of dealing between the parties be ignored in interpreting a collective bargaining agreement. Bonner, 781 F.2d at 205. Representatives of both union and management treated appellants' pay claims as grievable. In the words of Lorene Hayden, the president of the union and the individual responsible for negotiating the agreement for the union:
 
 
 84
 if [a matter is] not listed under the exclusions [found in Article 18 Section 1.B.] then it's grievable.
 
 
 85
 Shirley Dauth, the chief shop steward for the union and the union official responsible for deciding in the first instance whether a matter is grievable, determined that the FLSA and premium pay matters were grievable. Similarly, Michael O. Constanti, who was chief of the Management Employee Relations Branch of the Civilian Personnel Office at the time of the 1986 agreement and negotiated the agreement for management, testified that plaintiffs' claims could be grieved. Thus, an interpretation which brings all matters not explicitly and unambiguously excluded to the grievance procedure is consistent with the course of dealing of the parties to this agreement and the teaching of Carter v. Gibbs.
 
 
 86
 The Andreen appellants have failed to demonstrate that the premium pay dispute is a matter explicitly and unambiguously excluded from the exclusive grievance and arbitration procedures.
 
 B
 
 87
 With respect to both the premium pay and FLSA overtime pay disputes, the Andreen appellants refer to another provision in the contract to support their further contention that both disputes are excluded from the grievance and arbitration procedures. In their view, the exclusion in Article 18, section 1.B. (1) of an issue concerning "interpretation of any agency ... regulation, provision(s) of law or regulations of authorities outside the agency" exempts their two disputes because each requires an interpretation of "regulations of [an] authority outside the agency." Consequently, whenever an issue arises which requires interpretation of such a regulation, as is arguably possible with respect to the disputes in this case, that otherwise grievable and arbitrable issue is then excluded from the grievance and arbitration processes.
 
 
 88
 The exclusion in section 1.B. (1), however, does not remove grievable issues from the grievance and arbitration processes. Instead, it removes from the arbitrator the authority to interpret regulations promulgated by authorities outside the agency. Unlike the Muniz agreement, which created ambiguity as to how such interpretations would be made, the Andreen agreement specifies the manner in which the parties will resolve interpretation issues arising in grievable disputes.
 
 Article 18, section 11 provides that
 
 89
 [s]hould a grievant question the interpretation of a regulation, the grievance will be processed thru step 2 and will be delayed until the questioned policy has been interpreted by the proponent of the regulation. The management and union positions will be jointly forwarded to the proponent. The decision of the proponent as to the interpretation will be final and not subject to further review under the grievance procedure. The grievance may proceed to step 3 if there continues to be a dispute as to the application of the regulation.
 
 
 90
 If a grievance, including one concerning the application of a regulation which has been finally and conclusively interpreted by its proponent, is not resolved at step 3 in the grievance process, that grievance proceeds under Article 19 into arbitration. The agreement contains no limitation upon the power of the arbitrator to apply any law or regulation to any dispute in arbitration.
 
 
 91
 Section 11 thus explains the meaning of the exclusion set forth in section 1.B. (1). Whenever a question concerning interpretation of a regulation arises in a dispute that has entered the grievance process, the process is halted. The parties to the grievance argue their views to the proponent of the regulation, who decides the question. The parties are bound by agreement to accept the proponent's decision. The dispute if then unresolved returns to the grievance process and if necessary can be concluded in arbitration.
 
 
 92
 There is no ambiguity in this agreement about how questions of interpretation of regulations are to be resolved. The contractual arrangement concerning interpretation of regulations does not exclude either the underlying dispute or the related regulation interpretation issue from the embrace of the contract. The underlying grievable dispute, here being premium or overtime pay matters, does not leave the process because a regulation needs interpretation. Consequently, section 1.B. (1) cannot be read to exclude all otherwise arbitrable disputes ab initio from the grievance process, or cause such disputes, while moving through the grievance steps, to be permanently removed from the grievance and arbitration processes merely because the proponent of a regulation is called upon to interpret a regulation which an arbitrator can then apply to the facts of the dispute. The Andreen contract does not explicitly and unambiguously exclude premium and overtime pay disputes from grievance and arbitration. Rather, there are explicit and unambiguous contract terms that require the premium and overtime pay disputes to be resolved in the contract's exclusive dispute resolution procedures.
 
 
 93
 The decision of the Claims Court dismissing the Andreen complaint for lack of subject matter jurisdiction, on the authority of Carter v. Gibbs, is therefore affirmed.
 
 V
 
 94
 For the reasons stated above, the judgments of the trial courts in Muniz v. United States, Civ. No. 89-1894 (N.D.Cal. Feb. 4, 1991), Albrecht et al. v. Horner, No. CV-88-1816-HLH (C.D.Cal. Mar. 12, 1991), and Andreen et al. v. United States, No. 548-88C (Cl.Ct. Feb. 6, 1991) are
 
 
 95
 AFFIRMED.