Stephen **BOSCO, Charles L. Davis, Ray Dean Williams, John M. Wolf, and All Similarly Situated Individuals, Plaintiffs–Appellants,**

v.

The **UNITED STATES, Defendant–Appellee.**

No. 90–5132.

United States Court of Appeals, Federal Circuit.

Sept. 28, 1992.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Dec. 18, 1992.

Gregory O'Duden, Director of Litigation, National Treasury Employees Union, Washington, D.C., argued for plaintiffs-appellants. With him on the brief were Barbara A. Atkin, Senior Appellate Counsel and Timothy B. Hannapel, Asst. Counsel. Of counsel was Kerry L. Adams.

Domenique Kirchner, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., and David M. Cohen, Director.

Before MICHEL, Circuit Judge, SMITH, Senior Circuit Judge, and PLAGER, Circuit Judge.

ON PETITION FOR REHEARING

MICHEL, Circuit Judge.

## ORDER

The United States filed a combined Petition for Rehearing and Suggestion for Rehearing In Banc of our decision dated May 1, 1991, *Bosco v. United States*, 931 F.2d 879 (Fed.Cir.1991) (*Bosco I*), insofar as it affirmed the Claims Court's Tucker Act jurisdiction over a suit under the "prevailing rate" wage legislation (PR Act), Pub.L. No. 92–392, 86 Stat. 564 (1972) (codified as amended at 5 U.S.C. §§ 5341–5349 (1988)). The suit challenged the legality of the reclassification by the Internal Revenue Service (IRS) of positions held by Stephen Bosco and the other federal employees (collectively Bosco), and in it they requested lost pay. We held first that the Claims Court did have jurisdiction and second that the reclassification was lawful. The government challenges our first holding.

At the invitation of the court, Bosco filed a response to the government's petition. The court granted the Petition for Rehearing and, *sua sponte*, ordered oral argument. After reviewing the original briefs, the new submissions, and hearing a second oral argument, for the reasons stated below we maintain our prior holding that the Claims Court did have subject matter jurisdiction.

I.

A.

The premise of the government's main argument on rehearing is that since, as ordered, the reclassification of the mail processing equipment operator positions from the "Prevailing Rate" (PR) system to the General Schedule (GS) entitled Bosco to receive grade and pay retention benefits, 5 U.S.C. §§ 5362 & 5363 (1988), the Civil Service Reform Act (CSRA) and not the PR Act governs the rights of those affected by the reclassification.[1] Canvassing the legis-

---

1. In the response, Bosco attacks the government's premise by emphasizing that the named plaintiffs are also asserting claims on behalf of unnamed "similarly situated individuals" whom the IRS hired after its reclassification action. Those individuals, Bosco asserts, did not obtain any grade and pay retention benefits and only received rates of pay under the GS. We need not and do not, however, reach any issue that this fact may raise because we conclude that the Claims Court had jurisdiction over the claims of

**712**

lative history of the CSRA, the government argues that 5 U.S.C. § 5366(b) (1988) has implicitly eliminated the Claims Court's Tucker Act jurisdiction over Bosco's suit pursuant to the PR Act.[2] Moreover, the government contends that we incorrectly distinguished *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), in our original decision, *Bosco I*, 931 F.2d at 883, as the present case falls within the logic of *Fausto* because the CSRA covers this reclassification. The government reads *Fausto* as establishing the proposition that the CSRA provides the exclusive review procedures for any type of personnel action the statute covers in any way. However, upon reexamination of the CSRA, its legislative history, and case law, we conclude the government's construction is incorrect.

### B.

■ Section 5366(b) of title 5 provides,

(b) For purposes of any appeal procedures

. . . . .

(1) *any* action which is the basis of an individual's entitlement to benefits under this subchapter [*i.e.*, grade and pay retention], ...

\* \* \* \* \* \*

shall not be treated as appealable under such appeals procedures....

(Emphasis added). The nature and scope of "appeal procedures" are defined in chapter 77 of title 5, and refer to the Merit Systems Protection Board (MSPB or Board) appeal process for adverse personnel actions. 5 U.S.C. § 7701 (1988).[3] That Congress crafted a separate section to treat judicial review of MSPB decisions, 5 U.S.C.

§ 7703 (1988), further supports our conclusion that Congress intended "appeal procedures" to be strictly limited to MSPB appeals. If we were to agree with the government, therefore, we must construe "any" as intended to sweep within section 5366(b) longstanding Claims Court review of a PR Act claim under its Tucker Act jurisdiction. Our perusal of the legislative history reveals that Congress in no way manifested an intention in section 5366(b) to preempt preexisting causes of action outside the civil service system.

According to the House Committee Report accompanying the bill that dealt with grade and pay retention benefits,

Subsection (b) of section 5367 [(now 5366)] provides that any action which is the basis of an individual's entitlement to benefits under subchapter VI [(grade and pay retention)] ... shall not be treated as an adverse action for purposes of any appeal procedures. This subsection is not intended to prohibit the filing of classification appeals (such as under part 511 of the Commission's [(now OPM's)] regulations).... Rather, *subsection (b) is intended to prohibit the filing of adverse action appeals* based on downgrading actions.... Under subsection (b) the following actions would not constitute adverse actions for purposes of appeals procedures:

1. Reduction of employee to lower grade as a result of reclassification of position;

\* \* \* \* \* \*

House Comm. on Post Office and Civil Service, Grade and Pay Retention for Certain Employees, H.R.Rep. No. 994, 95th Cong., 2d Sess. 15 (1978) (emphasis added). Congress,[4] in enacting section 5366(b), sought

those employees who were afforded grade and pay retention benefits.

**2.** The government does not take issue with this court's conclusion in *Bradley v. United States*, 870 F.2d 1578, 1580 (Fed.Cir.1989), that the PR Act is a money-mandating statute giving rise to Claims Court jurisdiction under the Tucker Act.

**3.** To be precise, section 7701 refers in its section heading to "Appellate procedures."

**4.** The Conference Committee diminished the grade protection component of the House bill, limiting the grade retention period in reclassification cases to two years. Conference Report on the Civil Service Reform Act of 1978, S.Rep. No. 1272, 95th Cong., 2d Sess. 160 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2723, 2894. But there is no evidence that suggests that the conferees diverged from the House Committee's explanation for the purpose of the precursor to section 5366. We therefore believe that the changes at Conference are immaterial to the

to bar "adverse action appeals" for certain otherwise appealable agency personnel actions.[5] Similarly, section 7513(d) of title 5 addresses "adverse action appeals" and is restricted to administrative appeals to the MSPB. 5 U.S.C. § 7513(d) (1988). Accordingly, the legislative history and context indicate that in section 5366(b) Congress only expressly dealt with MSPB appeals and was silent with respect to Claims Court or district court consideration of a PR Act claim because it did not intend to affect the latter.

## C.

Nor are we persuaded that *Fausto* requires us to expand the plain meaning of the statutory language and ignore the history to create an implication that section 5366(b) also prohibits Claims Court consideration of Bosco's PR Act claim. The Supreme Court in *Fausto* focussed on "precisely drawn provisions" with respect to Board and judicial review of adverse actions of any type within chapter 75 of the CSRA to infer a congressional judgment to preclude Board and judicial review altogether of adverse actions against nonpreference eligible excepted service employees. 484 U.S. at 448–49, 108 S.Ct. at 674–75 (citation omitted). But as we have determined, because of pay and grade retention, Bosco's downgrading pursuant to his position reclassification was not an adverse action. Additionally, while the Supreme Court emphasized the "attention that [the CSRA] gives throughout to the rights of nonpreference excepted service employees," *id.* at 448, 108 S.Ct. at 674, we do not find comparable attention in the statute to the review rights of "prevailing rate" employees. In these respects, *Fausto*'s holdings are inapposite to this case.

Even if we were to read *Fausto* as broadly as the government does, its logic may militate against judicially expanding section 5366(b). The government ignores the differences between the nature of the CSRA provisions considered in *Fausto* and the negative dictate of section 5366(b). That is, whereas 5 U.S.C. §§ 7511, 7513(d), 7701, and 7703 (1988) affirmatively grant a form of judicial review to some but not all federal employees, section 5366(b) precludes Board review for certain otherwise appealable agency actions. *Cf.* 5 U.S.C. § 4303(e) (1988) (affirmatively defining review rights for specific categories of employees). Applying the approach of the Supreme Court, that the CSRA is complete and exclusive in the areas it expressly governs, the CSRA leaves undisturbed Bosco's PR Act right to seek relief under the Tucker Act here from the Claims Court.[6] In other words, since section 5366(b) bars only one specific type of (administrative) review, a second distinct type of (judicial) review is beyond the scope of the provision.[7]

---

instant case, and that the House Report embodies the limited effects of what Congress contemplated by enacting section 5366. *See Atwell v. Merit Sys. Protection Bd.,* 670 F.2d 272, 284–85 (D.C.Cir.1981).

5. The method chosen for this purpose was deeming actions with concomitant grade and pay retention not to be adverse actions at all. *See Atwell,* 670 F.2d at 285–86 (holding that a reduction in grade referred to in 5 U.S.C. § 7512(3) (1988)—a provision within the chapter on adverse actions of the CSRA—is limited to downgrading actions *without* grade or pay retention benefits).

6. Because of Bosco's receipt of grade and pay retention benefits under the CSRA, the government takes exception to our statement, "the instant case involves a type of personnel action not covered at all by the CSRA." *Bosco I,* 931 F.2d at 883. The government has pulled the statement out of its narrow context. The sentences preceding the quoted statement make plain that "personnel action" means an adverse action within chapter 75 of the CSRA. *Id.* But Bosco did not suffer an adverse action within the contemplation of chapter 75. *See supra* note 4. And in this sense, IRS' downgrading action is "not covered at all by the CSRA."

7. At one point in its petition, the government urges us to adhere to the "well-established principle of statutory construction: where Congress expressly enumerates certain exceptions from the statute, additional exceptions should not be implied in the absence of evidence of a contrary legislative intent." Petition for Rehearing and Suggestion for Rehearing In Banc at 14 (citation omitted). The principle, as stated, is irrelevant to the issues raised under section 5366(b). However, a necessary corollary of this principle for statutes that prohibit certain actions, such as section 5366(b), is that additional prohibitions should not be implied absent specific legislative intent. Utilizing the allowable application of

More concretely, to hold that the CSRA provides the sole review procedures for any personnel action it mentions, which the government maintains *Fausto* requires, would render the PR Act largely, if not totally, superfluous as unenforceable.[8] In effect, the PR Act would be abrogated for federal employees. This outcome stands in stark contrast to the ramification of the holding in *Fausto* on the Back Pay Act. The Supreme Court explained that it did not implicitly repeal the Back Pay Act. Rather, its holding only altered a judicially-created implication so that "the Claims Court (and any other court relying on Tucker Act jurisdiction) is not an 'appropriate authority' to review an agency's personnel determination." *Fausto*, 484 U.S. at 454, 108 S.Ct. at 677. But the implications of the government's position in the instant case would not be limited to courts relying on Tucker Act jurisdiction. The government would foreclose by implication all forms of judicial review (such as under the Administrative Procedure Act) of reclassifications with grade and pay retention, thereby obliterating at least the cause of action under the PR Act. This extreme result is necessarily so because section 5366(b), unlike the provisions construed in *Fausto*, is phrased in negative terms, and because there is no principled way to distinguish here between Claims Court Tucker Act review and any other avenues for trial court review. We cannot sanction such violence to the PR Act without even a hint from Congress that it intended such changes, and therefore leave undisturbed what the statute does not expressly extinguish.

The government also misapprehends the policy basis of *Fausto;* the Supreme Court grounded its holding in the peculiar context of adverse personnel actions. Such actions necessarily focus on the agency's appraisal of the misconduct of a particular employee.

By contrast, reclassifications have nothing to do with appraisals of the actions of individual employees. Neither the traditional desire to remove institutional barriers against necessary disciplinary actions against individual employees, *id.* at 445, 108 S.Ct. at 672, nor the avoidance of "inverted preference" shown to particular "disfavored" classes of employees, *id.* at 449–50, 108 S.Ct. at 674–75, is relevant to the facts of this case.

And the government has complained to the wrong forum about the potential lack of consistency in decision making due to the absence of a single, comprehensive authority like the MSPB, and about two layers of judicial review. *See id.* at 451, 108 S.Ct. at 675. Congress, through section 5366(b), chose to bar MSPB appeals of reclassifications with grade and pay retention benefits, but was silent in regard to other forms of review. This seems to us to evidence a deliberate congressional choice to preserve what it did not explicitly take away. Any objections based on concerns over consistency and repetitive judicial review should be brought before Congress.[9] We will not second guess the wisdom of Congress' choice and modify the plain meaning of a statute in order to produce what the government deems a wise result. *See Volk v. Hobson,* 866 F.2d 1398, 1403 (Fed.Cir.), *cert. denied,* 490 U.S. 1092, 109 S.Ct. 2435, 104 L.Ed.2d 991 (1989) (acknowledging "the logic inherent in the Supreme Court's admonitions to leave the architecture of the federal personnel system to Congress.").

Judicial restraint also directs us to sustain the Claims Court's jurisdiction despite the government's assertion that *"Bosco [I]* effectively stands the CSRA on its head by according greater *appeal rights* to reclassified employees who receive pay and grade retention benefits than reclassified employ-

---

the method for statutory construction that the government advocates therefore actually undermines its position.

**8.** Bosco has alleged that the IRS' conversion of the positions to the GS violated the PR Act. The government does not, and indeed could not, deny that the PR Act mandates the payment of money, *see, e.g., Bradley v. United States,* 870

F.2d 1578, 1580 (Fed.Cir.1989), and thus would otherwise form the predicate of a cause of action for lost pay within the Tucker Act jurisdiction of the Claims Court.

**9.** Moreover, it is less than certain that trial and appellate court treatment of a case under the PR Act constitutes repetitive judicial review, given the different roles of trial and appellate courts.

ees who suffer a reduction in pay or grade." Petition for Rehearing and Suggestion for Rehearing In Banc [*hereinafter* Rehearing Petition] at 15 (emphasis added). Nothing we hold today deals with "appeal rights," which, as noted earlier, are limited to review by the MSPB, but only the right to sue in a trial court under the PR Act. In any event, whatever comparative review advantages, if any, Bosco may enjoy over those reclassified employees without grade and pay retention benefits is a consequence of congressional judgment. Moreover, the government fails to cite any authority that has determined that direct access to the trial court is superior to MSPB review in the first instance. *Id.*

### D.

■ The government does not point to, nor have we found, any evidence in the legislative history that Congress was seeking to streamline the civil service by abrogating judicial review rights for personnel actions unrelated to an individual's performance. Specifically, we detect no congressional disfavor of PR Act claims. Such congressional silence has particular significance balanced against a mere judicial gloss as the government advocates on a meticulously drafted statute, especially when the right to bring the PR Act action in the Claims Court was well established. Moreover, we are mindful of "the strong presumption that Congress intends judicial review of administrative action." *Traynor v. Turnage*, 485 U.S. 535, 542, 108 S.Ct. 1372, 1378, 99 L.Ed.2d 618 (1988) (quoting *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 2135, 90 L.Ed.2d 623 (1986)) (post-*Fausto* decision, although in a different legal context). The government has failed to cite any evidence of a contrary congressional intent. *See id.* (confirming that "[t]he presumption in favor of judicial review may be overcome 'only upon a showing of "clear and convincing evidence" of a contrary legislative intent.'" (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967))). Therefore, we reiterate our prior holding that the CSRA does not divest the Claims Court of Tucker Act jurisdiction over Bosco's PR Act claim.

### II.

#### A.

The government further contends that the transfer of Bosco's positions from the PR system to the GS is "covered by chapter 23 of the CSRA because such action[ ] may be challenged as [a] prohibited personnel practice[ ]" violating merit system principles. Rehearing Petition at 12. *See* 5 U.S.C. § 2302(b)(11) (1988). As Bosco's allegations under the PR Act constitute a prohibited personnel practice, the government reasons, before suing in court Bosco must first request review by the Office of Special Counsel. Rehearing Petition at 12 (citing *National Treasury Employees Union v. Egger*, 783 F.2d 1114, 1116–17 (D.C.Cir.1986) (holding that IRS' reclassification actions—which we upheld in *Bosco I*—alleged in Administrative Procedure Act claims may be a prohibited personnel practice)). That Bosco did not do. Furthermore, section 2302(d), 5 U.S.C. § 2302(d) (1988), according to the government, lists the only "claims [that] could still be pursued in the federal courts in the first instance." Rehearing Petition at 14. Since Bosco's claims are not on that list per the government, the CSRA has extinguished direct access to the courts under the PR Act. *Id.*

#### B.

We believe the government's arguments are flawed in their premise. Bosco's allegations of PR Act violations do not constitute grounds for a prohibited personnel practice cognizable by chapter 23 of the CSRA. Indeed, section 2302, the provision defining prohibited personnel practices for purposes of title 5, does not include agency actions affecting "prevailing rate" employees as a "personnel action." *See* 5 U.S.C. §§ 2302(a)(2)(A) & (B) (1988). Nor is there any legislative history that shows that in enacting what became section 2302, Con-

gress even thought about PR Act claims. And for reasons parallel to those expressed in parts II.C. and D. for section 5366(b), we decline judicially to extend the precisely-worded section 2302 by assuming it was intended to include additional limitations not stated. Accordingly, we hold Bosco's PR Act claims are wholly beyond the scope of chapter 23,[10] and the CSRA does not affect Bosco's right to seek Claims Court review. *See Bradley v. United States*, 870 F.2d 1578, 1580 (Fed.Cir.1989) (determining that the PR Act is a money-mandating statute and can thus provide a cause of action under the Tucker Act jurisdiction of the Claims Court).

### III.

■ Before oral argument on rehearing, Bosco filed a Motion to Dismiss for Want of a Live Controversy. Bosco contends that after our original decision in this appeal, there is no longer an ongoing article III "case or controversy" between the parties because Bosco has no personal stake and could not gain anything from the outcome of this rehearing. However, as we are reopening the decision, albeit merely for clarifying and expressing additional reasons for our prior conclusion concerning the issue of whether the CSRA divested Claims Court jurisdiction over appellants' claims, Bosco's motion is misdirected. Once we granted rehearing, the original decision is set aside and the appeal is revived; it therefore cannot be said that the case or controversy present then has disappeared.

Accordingly, IT IS ORDERED that:

(1) With the additional reasons discussed above to uphold Claims Court jurisdiction, this court's decision and opinion in *Bosco v. United States*, 931 F.2d 879 (Fed.Cir.1991), are reinstated, unchanged.

(2) Bosco's Motion to Dismiss for Want of a Live Controversy is denied.

---

**10.** Although the Court of Appeals for the District of Columbia Circuit held that IRS' reclassification *may* be a prohibited personnel practice, *National Treasury Employees Union v. Egger*, 783 F.2d 1114, 1116–17, the appellants in that case asserted claims based on violation of the Administrative Procedure Act. Therefore, the *Egger* court did not focus on the portion of the definition of a prohibited personnel practice that details the types of actions covered. 5 U.S.C. § 2302(a)(2)(B).