ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of --                              )
                                           )
APTIM Federal Services, LLC                )       ASBCA Nos. 62052, 62133
                                           )
Under Contract No.  DACW41-99-D-9001       )

APPEARANCES FOR THE APPELLANT:             Thomas R. Krider, Esq.
                                           Alix K. Town, Esq.
                                             Oles Morrison Rinker & Baker LLP
                                             Seattle, WA

APPEARANCES FOR THE GOVERNMENT:            Michael P. Goodman, Esq.
                                             Engineer Chief Trial Attorney
                                           Emma Altheide, Esq.
                                           Jason Shippy, Esq.
                                             Engineer Trial Attorneys
                                             U.S. Army Engineer District, Kansas City

OPINION BY ADMINISTRATIVE JUDGE KINNER ON THE
APPELLANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND THE GOVERNMENT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Appellant, APTIM Federal Services, LLC (APTIM), was the successor
contractor on a cost reimbursable Superfund Site clean-up contract with the
Army Corps of Engineers.  APTIM claims entitlement to additional costs incurred
during the performance of a task order on that contract, as well as costs it incurred
after the performance period.  APTIM requests partial summary judgment.  The
government filed its response to APTIM's motion and a cross-motion for summary
judgment.  APTIM replied to the government's response and cross-motion.  The
government has replied to APTIM's response to its cross-motion.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

The parties filed multiple competing statements of fact.[1]  Despite their
peripheral disputes, the parties agree upon the following facts.

The contract was initiated in 1998 for performance of environmental
remediation at the Maywood Chemical Super Fund site in New Jersey (gov't reply

---

[1] "App. mot." refers to appellant's motion for partial summary judgment and the
     statement of facts, filed November 12, 2019.  The government's December 11,

facts at 2 ¶ 1; R4, tab 1 at 4-6). The contract was an Indefinite Quantity/Indefinite Delivery Completion Form Cost Reimbursement contract (gov't reply facts at 2 ¶ 2; R4, tab 1 at 4)[2]. APTIM was awarded Task Order No. 5 to continue work at the Maywood site on December 16, 2008 (gov't reply facts at 7 ¶ 9; R4, tab 18 at 2). The Task Order document consists almost entirely of lists of the applicable labor rates. The terms governing the Task Order are primarily contained in the original contract and subsequent modifications.

Section 11 of the added statement of work describes the manner in which task orders for the contract may be established (R4, tab 1 at 14-15). Subsection 11.1.2.l provides that the government may request a proposal for a designated scope of work (*id.* at 14). The contractor then prepares and submits its proposal for the work which is used as the basis for negotiation of the estimated costs and fees. Section 18.1 states that the contracting officer decides which form of cost reimbursement vehicle would be used for each task order, whether award fee, fixed fee, or incentive fee (gov't reply facts at 2 ¶ 3; R4, tab 1 at 17). The corresponding Fixed Fee clauses, Federal Acquisition Regulation (FAR) 52.216-8-10 (MAR 1997) were included. Each clause states "[t]he Government shall pay the contractor for performing this contract the fixed fee specified in the Schedule" (R4, tab 1 at 181-85). These clauses contemplate payment of the fixed fee in increments defined in each modification (*id*. at 182

---

2019 cross-motion for full summary judgment and opposition to appellant's motion shall be cited as "gov't opp'n" and the separate statement of genuine issues of fact shall be cited as "gov't opp'n facts". Appellant's January 24, 2020 reply and response to the government's cross-motion shall be cited as "app. resp." and the separate statement of genuine issues of fact shall be cited as "app. resp. facts". The government's February 24, 2020 reply in support of its motion and opposition to appellant's motion shall be cited as "gov't reply" and the separate statement of genuine issues of fact shall be cited as "gov't reply facts".

[2] FAR 16.306, COST PLUS-FIXED FEE CONTRACTS, defines this contracting vehicle:

(d) *Completion and term forms*. A cost-plus-fixed-fee contract may take one of two basic forms-completion or term.

(1) The completion form describes the scope of work by stating a definite goal or target and specifying an end product. This form of contract normally requires the contractor to complete and deliver the specified end product (*e.g*., a final report of research accomplishing the goal or target) within the estimated cost, if possible, as a condition for payment of the entire fixed fee. However, in the event the work cannot be completed within the estimated cost, the Government may require more effort without increase in fee, provided the Government increases the estimated cost.

2

("Payment of the fixed fee shall be made as specified in the Schedule")). The parties agree that Task Order No. 5 relied upon the basic version of the fixed fee clause in the contract, (gov't reply facts at 2 ¶ 4), although the work of the contract appears to be primarily construction (R4, tab 18 at 3, 6-7). The fixed fee clause for construction, FAR 52.216-9, relates to payment of the fee to the percentage of completed work.

LIMITATION OF COST, FAR 52.232-20, was included in the contract, in Task Order Modifications No. 19-20 and in correspondence from APTIM (R4, tabs 35, 40-41, 48). The Limitation of Cost clause is used "in solicitations and contracts if a fully funded cost-reimbursement contract is contemplated, whether or not the contract provides for payment of a fee." FAR § 32.706–2(a); *see also* 48 Fed. Reg. 42,102–01–H, 42,561 (Sept. 19, 1983) (directing use of the clause "in solicitations and contracts if a fully funded cost-reimbursement contract is contemplated ... whether or not the contract provides for payment of a fee"); FAR § 32.703–1(a) ("If the contract is fully funded, funds are obligated to cover the price or target price of a fixed-price contract or the estimated cost and any fee of a cost-reimbursement contract."). The clause in the Maywood contract provides in pertinent part:

> (b) The Contractor shall notify the Contracting Officer in writing whenever it has reason to believe that (1) The costs the Contractor expects to incur under this contract in the next 60 days, when added to all costs previously incurred, will exceed 75 percent of the estimated cost specified in the Schedule.

(Gov't reply facts at 8 ¶ 13; R4, tab 1 at 254)

LIMITATION OF FUNDS, FAR 52.232-22 (APR 1984), is not explicitly incorporated by reference in either the base contract or Task Order No. 5 in the record (compare R4, tab 1 and tabs 18, 52 at 2, 4, 63 at 3). That clause is nonetheless referenced in block 13 of the SF 30 for every modification of Task Order No. 5 (R4, tabs 38, 42-47, 52), and in the claim (R4, tab 66 at 2-3) and in contracting officer correspondence, (R4, tabs 68 at 25, 69 at 3, 5). The parties also rely upon the clause in the cross-motions (app. mot. at 4; gov't opp'n. at 2).[3] The Limitation of Funds clause provides in pertinent part:

---

[3] The Maywood contract was modified in 1999 to "incorporate the Continuing Contracts Clause (Alternate) 52.232-5002 - MAR 1995, and made [it] a part thereof in accordance with Engineering Far Regulation Supplement (EFARS) 32.705-l00(b)" (R4, tab 3 at 3). Similar to the Limitation of Funds clause, the Continuing Contracts clause is used in solicitations and contracts for civil works incrementally-funded contracts when the agency cannot obligate the entire contract price in advance of appropriations (R4, tab 3 at 6).

3

(c) The Contractor shall notify the Contracting Officer in writing whenever it has reason to believe that the costs it expects to incur under this contract in the next 60 days, when added to all costs previously incurred, will exceed 75 percent of (1) the total amount so far allotted to the contract by the Government.

. . . .

(d) Sixty days before the end of the period specified in the Schedule, the Contractor shall notify the Contracting Officer in writing of the estimated amount of additional funds, if any, required to continue timely performance under the contract or for any further period specified in the Schedule or otherwise agreed upon, and when the funds will be required.

In large, complex remediation contracts, like this one for the Maywood site, the government uses a Work Allocation Document (WAD) system. That system is utilized to allocate the funds that are obligated by the government for the contract and to further control the expenditure of funds for the work of the contract (gov't reply facts at 3 ¶ 5; R4, tab 1 at 19). The WAD system controls spending on a project by requiring a contractor to seek authorization and approval prior to beginning an increment of work and to notify the government when additional funding is necessary to accomplish each portion of the work (gov't reply facts at 3 ¶ 6). The several steps of the WAD process are described in § 19.8 of the statement of work (gov't reply facts at 4-5 ¶ 7; R4, tab 1 at 19). When initiating a task, the government could request that APTIM provide a budget using the WAD system, including a schedule, description of the task and estimates to perform that task (gov't reply facts at 5 ¶ 7, at 19.8.2; R4, tab 1 at 19).

Section 19.8.4 of the statement of work provided that once a WAD submission was approved, APTIM would submit requests to the government for release of funds for elements of the work within the WAD. Approval also meant that "[t]he contractor is authorized to expend and/or obligate funds under the order up to the dollar value authorized by the individual WAD. The government may not reimburse the contractor for costs incurred in excess of WAD allocations" (gov't reply facts at 5 ¶ 7; R4, tab 1 at 19). The request by APTIM and approval by the government to release funding for

the proposed budget is referred to as the Authority to Proceed (ATP) (gov't reply facts at 3 ¶ 6; R4, tab 1 at 19).

In accordance with the terms of the Limitation of Cost clause, on April 19, 2013, APTIM gave notice to the contracting officer that it had expended 75 percent of the funds allotted to the task order and that it estimated that the remaining funds would be expended by May 8, 2013 (gov't reply facts at 8 ¶ 13; R4, tab 48 at 2). Throughout its completion of the Task Order, APTIM was unaware that a cost overrun was imminent for either the performance or post-performance costs (gov't reply facts at 16 ¶ 19).

The parties utilized the WAD system to administer Task Order No. 5 (gov't reply facts at 7 ¶ 10; R4, tab 52 at 9-21). Pursuant to the terms and obligations of the contract and Task Order No. 5, APTIM initiated the WAD process by submitting ATP 332 to establish a new budget and to request authorization to incur costs and fixed fee for a specific increment of work (app. resp. facts at 4 ¶ 8; gov't reply facts at 6 ¶ 8). ATP 332 limited the amount of costs APTIM was allowed to incur as well as the fixed fee associated with the scope identified in that ATP (gov't reply facts at 6 ¶ 8). The government agreed to the amounts proposed by APTIM in ATP 332 (gov't reply facts at 6 ¶ 8; R4, tab 2). That agreement was incorporated into the contract by Modification No. 29 on August 23, 2013 (gov't reply facts at 6 ¶ 8, 9 ¶ 14, 11 ¶ 17; R4, tab 5).

From issuance in 2008 until 2013, the parties executed several modifications which increased the negotiated and obligated amount of the fee (gov't reply facts at 7 ¶ 11; R4, tabs 18, 28, 39, 51-52). The negotiated estimated cost plus fee of Task Order No. 5 was $190,166,541, which included $178,608,164 for estimated construction cost and $11,558,287 for the fixed fee. Modification No. 29 identified the amount by which the total obligated funds for the Task Order were increased (R4, tab 52 at 3-4). This set the amount of funds within which APTIM was authorized to incur costs (gov't reply facts at 6 ¶ 8). Modification No. 29 obligated funding for the additional amount of work that was negotiated and set in ATP 332 (gov't reply facts at 9 ¶ 14; R4, tab 52 at 3-5). The funding authorized in Modification No. 29 was specifically allocated between the estimated cost and the fixed fee (gov't reply facts at 11 ¶ 18; R4, tab 52 at 3-4).

The total amount of funding which was obligated by Modification No. 29 was $1,400,000, consisting of $1,314,555 for the estimated cost of construction and $85,445 as fixed fee. With the increased obligation in Modification No. 29, the obligated amount for the estimated cost plus fee of Task Order No. 5 still remained below the total negotiated amount. With the addition of Modification No. 29, the total estimated cost for construction on Task Order No. 5 reached $171,021,963 and $11,116,429 for the fixed fee. Thus, the total estimated cost plus fee for Task Order No. 5 was $182,138,392 (gov't opp'n at 4; app. mot. at 3-4; R4, tab 52 at 3-4). Modification No. 29 contained a statement that the remaining funding would be

5

obligated on subsequent modifications at the discretion of the government in accordance with the Limitation of Funds clause, FAR 52.232-22 (R4, tab 52 at 4).

The government had conducted a small business procurement for the follow-on contractor to continue work at the Maywood site following expiration of Task Order No. 5 (app. resp. facts at 8 ¶ 2; R4, tab 68 at 4). The follow-on contract was awarded at the end of May 2013 (app. resp. facts at 8 ¶ 5; R4, tab 68 at 4). The award was protested (*id.*). The parties understood that APTIM could not cease performance before the follow-on contractor could assume the work (gov't reply facts at 13 ¶ 7). The protest was resolved the same day Modification No. 29 was executed, August 23, 2013 (gov't resp. facts at 12 ¶ 5; R4, tab 52 at 2).

The period of performance for Task Order No. 5 expired December 15, 2013 (gov't reply facts at 11 ¶ 1; R4, tab 52 at 3). The parties conducted discussions and exchanges of documents between at least September 2015-June 2017 (gov't reply facts at 14-16 ¶¶ 9-17; R4, tabs 55, 60, 62-63; app. supp. R4 tabs 74-75). By letter on August 22, 2016, the contracting officer informed APTIM that the government would not pay for costs that were incurred after the expiration of the task order (R4, tab 60). At that time, the contracting officer also informed APTIM that reimbursement of any costs incurred by APTIM above the amount authorized as the limitation of cost as a result of Modification No. 29 would not be approved (*id.*). Again on June 2, 2017, the contracting officer informed APTIM that the government would not pay any amount above the amounts set in Modification No. 29, or amounts incurred after the expiration of the contract (gov't reply facts at 16 ¶ 17; R4, tab 63 at 3). Negotiations ended January 18, 2018 when APTIM submitted its initial claim, which was followed by its certified claim on May 9, 2019 (gov't reply facts at 16 ¶ 18; R4, tabs 65, 68).

APTIM's claim seeks payment for an unpaid portion of the amount of fee allocated in Modification No. 29. "The final incremental funding provided by Modification No. 29 did not fully fund the negotiated fixed fee on twelve WADs under the contract" (R4, tab 68 at 3). APTIM also claims entitlement to other amounts and demands that the government supply the additional funding necessary to allow APTIM to bill the remaining fixed fee of $642,157.47 (*id.*). The invoicing and payment of the fixed fee was not addressed by the contracting officer in either the August 22, 2016 or June 12, 2017 response to the claim (R4, tabs 60, 63 at 2-3). APTIM filed its initial appeal on April 23, 2019, docketed as ASBCA No. 62052 and filed its second appeal on July 11, 2019, docketed as ASBCA No. 62133, which was contemporaneously consolidated.

<u>DECISION</u>

These cross-motions must be decided utilizing the familiar summary judgment framework recognized by this Board as established by the Federal Rules of Civil

6

Procedure and case law (ASBCA Rules 7(c)(2)). When faced with opposing motions for summary judgment we evaluate each motion upon its own merits. *BAE Systems Information & Electronic Systems Integration, Inc. (formerly Lockheed Martin IR Imaging Systems, Inc., and Loral Infrared and Imaging Systems, Inc.)*, ASBCA No. 44832, 01-2 BCA ¶ 31,495 at 155,521, citing *McKay v. United States*, 199 F.3d 1376, 1380 (Fed. Cir. 1999); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987).

APTIM's Motion

Summary judgement may be determined on a motion which addresses only a legal issue. The opposing motions before us require only an interpretation of the contract which may be concluded on summary judgment. *Ingenieria y Constructora Washington, S.A.*, ASBCA, No. 54561, 06-2 BCA ¶ 33,379 at 165,482. Contract interpretation can be resolved by summary judgment if the provisions in dispute are unambiguous. *Skanska US Building, Inc.*, ASBCA No. 56339, 10-1 BCA ¶ 34,392 at 169,832-33, citing *Robert A. Muniz v. United States*, 972 F.2d 1304, 1309 (Fed. Cir. 1992); *P.J. Maffei Bldg Wrecking Corp.*, 732 F.2d 913, 916 (Fed. Cir. 1984). We find the construction of the Limitation of Cost, Limitation of Funds and Fixed Fee clauses is unambiguous, and the parties do not contend otherwise.

APTIM claims that it is entitled to payment of additional fee of $642,157.47, after accounting for certain credits to the government (app. resp. at 2). That amount represents the full amount of fee negotiated and fixed at the outset of Task Order No. 5 (R4, tab 68 at 3, 29). APTIM also claims entitlement to additional fee because it "completed more scope than the parties anticipated in Modification No. 29, including the entire close out of the project, the quantification of which the parties have not yet agreed upon" (app. resp. at 6). APTIM asserts that examination of the work allegedly performed for the additional fee is irrelevant to resolution of its motion. APTIM asks the Board to resolve only the legal question whether the government is required to pay the full fee established for a cost-reimbursement contract even if the government has not yet fully obligated funds up to that amount. The government acknowledges that resolution of whether APTIM completed all the work is immaterial to resolving the effect of the applicable clauses on the parties' contract obligations (gov't reply at 5). Thus, this question may be answered without examining disputed material facts.

APTIM's position relies upon its analysis of the Limitation of Funds and Fixed Fee clauses. Cases analyzing the Limitation of Funds clause typically arise from a contractor's attempt to cover a potential overrun by comingling the funds allotted to its contract for costs with the funds allotted for fee.[4] APTIM's argument conversely

---

[4] *See e.g., Parsons-UXB Joint Venture.*, ASBCA No. 56481, 13-1 BCA ¶ 35,378; *George G. Sharp, Inc.*, ASBCA No. 55385, 09-1 BCA ¶ 34,117; *International*

7

focuses only upon the amount allotted for fee, excluding consideration of the amount allotted for cost. There is no dispute that the total negotiated fee is greater than the sum of the amounts allotted for fee in the modifications. APTIM says the government remains obligated to pay the full fee regardless of how much was authorized in the modifications which incrementally funded the fee. This is so, according to APTIM, because a proper interpretation of the Limitation of Funds clause and the Fixed Fee clause reveals the government does not possess discretion to deny a portion of the fee if all the work of the task order is complete (app. mot. at 7-9). It argues that the Fixed Fee clause is not modified by the Limitation of Funds clause, which pertains only to the amount of cost the contractor may incur, and not to the fee. Based upon that, it claims the government's position is contrary to the plain language of the contract.

APTIM's analysis specifically focuses on the Board's decision in *John J. McMullen Associates, Inc.*, ASBCA No. 22450, 79-1 BCA ¶ 13,818. In that case, like the typical appeals referenced above, the Board allowed the contractor to utilize funds that were obligated to the contract for fee to cover costs that had been incurred. That decision was primarily based upon two facts present in that case. The first was that the second amendment to the contract in *McMullen* allotted the total amount payable for cost and fee to the contract. Second, there had been no designation of the allotment between cost and fee. The Board found that no limit was placed on the fee because the Limitation of Funds clause does not apply to the fee. The Board concluded that, without separate ceilings on cost and fee, the contract documents imposed only a lump-sum ceiling on cost reimbursement which permitted use of the funds intended for the fee to cover additional costs. Those facts are not present here. That decision is clearly distinguished from this appeal and of little help.

APTIM further argues that the regulation which authorizes cost reimbursement completion form contracts mandates that the government pay the entire fixed fee (app. mot. at 6). It argues that FAR 16.306(d)(1) describes the nature of the Maywood contract to include payment of the entire fee. APTIM reads too much into that regulation. That subsection contains no mandatory language. The description

*Technology Corp.*, ASBCA No. 54136, 06-2 BCA ¶ 33,348; *Arbiter Systems, Inc.*, ASBCA No. 47403, 97-2 BCA ¶ 29,183; *Cal-Tron Systems, Inc.*, ASBCA No. 49159, 97-1 BCA ¶ 28,841; *Lansdowne Steel & Iron Company, Inc.*, ASBCA No. 41110, 95-1 BCA ¶ 27,506; *Defense Systems Concepts, Inc.*, ASBCA No. 44540, 93-2 BCA ¶ 25,568; *Systems Engineering Associates Corp.*, ASBCA Nos. 38592 *et. seq.* 91-2 BCA ¶ 23,676; *3C Systems, Inc.*, 91-2 BCA ¶ 23,916; *George G. Sharp, Inc.*, ASBCA Nos. 32,338, 32339, 89-3 BCA ¶ 22,103; *Vehicle Research Corporation*, ASBCA No. 26581, 83-2 BCA ¶ 16,721; *Planar Corporation*, ASBCA No. 21060, 77-1 BCA ¶12,269; *The Magnavox Company* ASBCA No. 17455, 74-1 BCA ¶ 10,495.

provides only the "normal" expectation how such a contract may work, not a direction. And certainly, it does not require full funding of the total estimated fee.

Contrary to APTIM's argument, the Maywood contract does not contain an unequivocal commitment by the government to pay the negotiated fee. Although the Fixed Fee clause includes an obligation of the government to pay the fee, the commitment is qualified in several ways. First, the parties have repeatedly modified the Task Order to specify the amount of fee to be paid. Specifically, in Modification No. 29, as part of the ATP process, the parties agreed upon the increment of work, and the amount of fee to be authorized. As described by APTIM, it proposed the amount of fee that would correspond with the work performed in ATP 332 (app. mot. at 5, app. resp. at 4 ¶ 8).

Once the parties agreed upon the scope of work and amount of cost and fee, ATP 332 was approved and incorporated into the schedule in Modification No. 29. As APTIM concedes, this established the ceiling for payment of the fixed fee for that increment of work (app. resp. at 5). We find nothing in the WAD system, the ATPs, the modifications, or the contract that indicates the initial estimate of fee takes precedent over the mutually agreed fee the government has accepted in each modification. It is unreasonable to interpret the contract, as APTIM does, so that the contractor is free to circumvent the WAD system and disregard the limit set on the payable fee for each increment of work. The limitation on the fee set in each modification cannot be read out of the contract, as APTIM's interpretation of the Fixed Fee clause would do.

Second, payment of the fee is dependent upon performance of the contract. "The Government shall pay the Contractor for performing this contract the fixed fee specified in the Schedule" (R4, tab 1 at 182). Performance of the contract is reasonably read to mean accomplishment of the full scope of the contract work. Full performance is presupposed by APTIM as well.[5] In APTIM's argument, it associates the scope of full performance with the total negotiated fee. But, that is not the scope of work that is specified by the modifications, or authorized by the WAD ATPs. The scope of work associated with each modification is specified in the modification, as is the portion of the fee payable for that increment of work. There is no indication in the record that the accumulated WADs are intended to precisely equate to the entire scope

---

[5] It describes the issue as "whether the government's failure/refusal to obligate sufficient funds to pay the full value of the negotiated and earned fee relieves the government of its obligation to pay the full value of the fee APTIM has rightfully earned by its performance" (app. mot. at 1).

9

of work upon which the total estimated cost was established. Nor is that the gauge by which the amount of fee is paid upon each increment of work.

Third, the commitment to pay the fee in the Fixed Fee clause is modified by the next sentence which provides that the manner and timing for payment of the fee is established elsewhere in the contract. "Payment of the fixed fee shall be made as specified in the Schedule." In the Maywood contract, the fee amount in the schedule was specified in successive subsequent contract modifications. Each of the modifications specified the amount by which the government increased its obligation of the allowable costs. As described in the Fixed Fee clause, each modification also specified the additional amount of the negotiated fixed fee for which the government assumed an obligation to pay. It is the sum of the obligated amount of fee in each modification that the government is committed to pay, not the total negotiated fee whether greater or less than the obligated sum. Thus, there is no basis for APTIM's presumption that its current performance "has rightfully earned" the total negotiated fee. With that precise apportioning of the payable fee, the inquiry can end. APTIM has simply not shown that the government assumed a greater obligation, much less a commitment to fully fund the total estimated fee.

### The Government's Motion

Unlike APTIM's motion, which requires only a legal determination, the government's motion requires us to consider possibly disputed facts. When considering a motion for summary judgment, the Board's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Raytheon Company*, *Space & Airborne Systems.*, ASBCA Nos. 57801, *et. seq.*, 15-1 BCA ¶ 36,024 at 175,948 citing *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). Summary judgment is available in every action, not as a procedural shortcut, but to secure a just, speedy and inexpensive determination. *Sweats Fashions*, *Inc. v. Pannill Knitting Co. Inc.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987) (internal citations omitted). It is the burden of the moving party to establish that its motion does not require consideration of genuine issues of material fact. This must be demonstrated by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The mere allegation of a factual dispute will not defeat a motion for summary judgment if it is otherwise properly supported. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. at 247-48. Such a dispute must involve facts which are material to the analysis of the applicable substantive law. *Id.* at 248. To defeat a motion for summary judgment a party may not rely upon vague accusations but must identify sufficient evidence to show an evidentiary conflict exists on the record requiring resolution at a hearing. *Id.* at 249. While the non-moving party is not required to present its entire case to defeat the motion, the non-movant must present sufficient evidence to establish that a material fact is in dispute. *Opryland USA*

*Inc. v. Great American Music Show*, *Inc.*, 970 F.2d 847, 850 (Fed. Cir. 1992) (internal citations omitted).

The government's cross motion argues that APTIM cannot recover additional cost because APTIM could not perform more work than what was allowed in Modification No. 29 (gov't opp'n facts at 3 ¶ 4). APTIM asserts in response that it "disagrees that Modification 29 and ATP 332 prevented APTIM from performing an increased percentage of scope without further authorization from the government" (app. resp. facts at 4 ¶ 8). As explained above, that position is incorrect regarding the fee. It is equally incorrect regarding cost. Modification No. 29 authorized APTIM to perform a certain scope of work. That scope was authorized because it was the only amount of work for which the government promised to pay APTIM. *National Civil Service League v. United States*, 643 F.2d 768, 773 (Ct. Cl. 1981) (Government imposed ceiling creates a cut-off point on its financial obligation to the appellant. "It is well settled that the Government may place a limit upon its total liability under a cost-reimbursement contract."). That is the obvious historical purpose of placing cost limitations on a cost-reimbursement contracting vehicle, to give the government specific control of appropriated funds. *John J. McMullen Associates*, *Inc.*, ASBCA No. 22450, 79-1 BCA ¶ 13,818; *Aries Corporation*, ASBCA No. 14004, 70-1 BCA ¶ 8,249. Accordingly, APTIM's claims that the government's control of its expenditures is inequitable are misplaced. The cost-reimbursement method of contracting, with its cost limitations provisions, protects the government, by ensuring it is only committed to pay for the work it chooses, and the contractor, by ensuring it is only required to perform work for which the government has committed to pay. *Parsons-UXB Joint Venture*, ASBCA No. 56481, 13-1 BCA ¶ 35,378 at 173,595 (The cost limitation clauses protect both parties, and neither may employ them unfairly.).

The government further argues that APTIM cannot recover additional cost regardless of its actual expenditures because it failed to provide the requisite notice required by the Limitation of Funds clause. The government asserts that APTIM has failed to demonstrate that it meets any of the ways in which the required notification may be excused. APTIM does not dispute that it failed to deliver notice to the contracting officer regarding a potential overrun (app. resp. at 10). APTIM states that it cannot be held responsible for providing notice of its likely overrun because it did not possess sufficient knowledge of the overrun. APTIM relies upon the principle established in *General Elec. Co. v. United States*, 440 F.2d 420, 684 (Ct. Cl. 1971), and the succeeding decision of the United States Court of Appeals for the Federal Circuit, *RMI*, *Inc. v. United States*, 800 F.2d 246 (Fed. Cir. 1986). It was established in those decisions that the contracting officer does not possess discretion to refuse to provide additional funding in a cost-plus-fixed-fee contract when the contractor could not have known of an overrun to provide the contracting officer notice within the time required. The burden of proving that a cost overrun was not reasonably foreseeable

11

rests on appellant. *Parsons-UXB Joint Venture*, ASBCA No. 56481, 11-1 BCA ¶ 34,680 at 170,831 (relying on *Moshman Associates*, *Inc.*, ASBCA No. 52868, 02-1BCA ¶31,852 at 157,410). "The essential test is whether the contractor "knew or should have known," prior to the end of contract performance that there would be a total cost overrun" (*id*.).

APTIM meets that essential test because the government does not challenge APTIM's assertion that it was unaware of the potential overrun (gov't reply facts at 16 ¶ 19). APTIM claims it was unaware of the overrun because "an accounting issue had been discovered" that was expected to result in a credit to the government (app. resp. at 9-10). APTIM does not explain the accounting issue. Nor does APTIM explain when it became aware of the accounting issue or how it learned of it. The only support APTIM offers for its factual allegation is a July 28, 2016 email (app. supp. R4, tab 73 at 1). The email is between the incoming contractor's contracts administrator and a government official. The email in the record consists of 56 pages, including various monthly progress reports and project spreadsheets pertaining to Task Orders Nos. 1-6, primarily from 2013. Other than the cover email, there is no apparent discussion of an accounting issue or expected credit due to the government. The body of the email refers to the attached reports indicating that the reports were provided "under the task order" which is presumed to reference during performance of Task Order No. 5. That is not sufficient evidence to establish as a material fact whether APTIM could have learned of the overrun prior to December 2013. The contracts manager states that the government was aware of the credit, but describes it as "part of the misunderstanding on the available funding and overall status of the contract" (*id*.). The email explains that the contractor considered the credit to be available funding for its costs, but sheds no light on when APTIM learned of the credit and what it knew when it did.

On this undeveloped record the nature and timing of the accounting issue experienced by APTIM is a triable issue of fact as to whether it had reason to foresee its cost overrun prior to completion of the contract to appropriately notify the contracting officer.

12

<u>CONCLUSION</u>

Pursuant to the operation of the Fixed Fee clause and the ceiling imposed in Modification No. 29, APTIM cannot obtain fee in excess of the amount obligated. APTIM's partial motion for summary judgment is denied.

The portion of the government's cross-motion that argues APTIM cannot recover additional cost or perform more work than allowed in Modification No. 29 is granted. The presence of triable material facts precludes a ruling upon the remainder of the government's cross-motion for summary judgment, as to APTIM's entitlement to additional cost in excess of the limits set pursuant to the Limitation of Funds clause.

Dated: September 18, 2020

DONALD E. KINNER
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

13

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62052, 62133, Appeals of APTIM Federal Services, LLC, rendered in conformance with the Board's Charter.

Dated:  September 18, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals